**Kenneth R. KOLLODGE, Appellant,**

**v.**

**STATE of Alaska, Dale Cheek, Donald R. Wilson, James R. Carr and Alaska Public Employees Association, Appellees.**

**No. S–1987.**

Supreme Court of Alaska.

July 1, 1988.

James M. Hackett, James M. Hackett, Inc., Fairbanks, for appellant.

Gail M. Ballou, Law Office of Gail M. Ballou, Fairbanks, for appellees State of Alaska, Dale Cheek, Donald R. Wilson and James R. Carr.

Robert B. Groseclose and Barbara L. Schuhmann, Staley, DeLisio, Cook & Sherry, Inc., Fairbanks, for appellee Alaska Public Employees Ass'n.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This suit arises out of the dismissal of Kenneth Kollodge from his position as Wage and Hour Investigator for the State Department of Labor. Kollodge was covered by the collective bargaining agreement between the Alaska Public Employees Association (APEA) and the State of Alaska, and grieved his termination in ac-

cordance with the grievance procedure contained in the agreement. After a hearing before the Commissioner of Administration at which his grievance was denied, and after the APEA denied Kollodge's request to arbitrate his grievance, Kollodge brought suit in superior court claiming violations of state and federal due process, various statutory and contract causes of action, and breach of the duty of fair representation. The superior court granted summary judgment in favor of the State and the APEA on the grounds that Kollodge's claims were barred by the statute of limitations.

### I.

Kenneth Kollodge was hired on February 22, 1977 as a Wage and Hour Investigator I in the Fairbanks office of the Alaska Department of Labor. As a condition of employment, Kollodge joined the APEA. The APEA is the union recognized under AS 23.40.080 as the exclusive representative of all employees in the "General Government Unit," the bargaining unit covering Kollodge's job classification. James Carr was employed in the same office as a Wage and Hour Investigator II and served as Kollodge's immediate supervisor. Carr was responsible for evaluating Kollodge's performance. In Carr's first three performance evaluations of Kollodge, Carr rated Kollodge as outstanding and recommended him for merit increases.

In January 1981, Kollodge filed a grievance against Carr for altering Kollodge's timesheet by changing one day of sick leave to annual leave. The dispute was resolved in Kollodge's favor, who then withdrew his grievance against Carr. Carr's next annual performance evaluation of Kollodge, dated March of 1981, noted Kollodge's tendency towards tardiness, but was otherwise satisfactory and recommended a merit increase.

Troubles began between Kollodge and his superiors Carr, Donald Wilson (the statewide supervisor of Wage and Hour Administration in the Labor Standards and Safety Division of the Alaska Department of Labor), and Dale Cheek (the Director of the Labor Standards and Safety Division of the Alaska Department of Labor) in late October, 1981, when Carr warned Kollodge that his frequent tardiness had become a problem. A rapid crossfire of memos between Kollodge, Carr and Wilson, beginning in mid-December, 1981 and lasting until Kollodge's ultimate termination on April 23, 1982, evidences the mounting hostilities between Kollodge and his supervisors, Carr and Wilson. Carr complained of Kollodge's continued tardiness, failure to follow department policy with regard to wage claims, and insubordination. Kollodge retorted with claims that Carr and Wilson were out to get him.

After numerous warnings, the following disciplinary action was taken against Kollodge: On February 3, 1981, Wilson placed Kollodge on a one-day suspension after finding "a continuing pattern of disobedience and insubordination" in Kollodge's actions and in his January 30, 1982 memo to Wilson. On March 9, 1982, Wilson placed Kollodge on a five-day suspension after Kollodge refused to discuss his job evaluation with Carr, failed to report his absences from the office as required, and mishandled a particular wage claim. On April 8, 1982, Wilson placed Kollodge on a ten-day suspension for pursuing a wage claim in excess of $5,000, which was in violation of both the $5,000 limit set in AS 23.05.220(c) and written division policies. Wilson warned Kollodge that if the charges were substantiated in an ensuing investigation, Kollodge would "face disciplinary action up to and including discharge." By letter dated April 23, 1982, the Department of Labor notified Kollodge of his termination after the investigation confirmed that Kollodge had pursued an illegal wage claim.

The collective bargaining agreement between the State of Alaska and the APEA contains a grievance procedure as the sole means of settling disputes. The agreement outlines a five-step grievance procedure culminating in arbitration at step five. Pursuant to that procedure, Kollodge submitted four grievances separately challenging his employment evaluation for the period March 16, 1981 to February 15, 1982;

his one-day suspension in February, 1982; his five-day suspension in March, 1982; and his termination in April, 1982. Bobby Watts, Northern Region Field Office Manager for the APEA, processed the grievances through the first three steps of the grievance procedure.[1] At step one, Wilson denied each grievance. At step two, Cheek denied each grievance. At step three, the Commissioner of Labor or his designee denied each grievance.

Watts consolidated the four separate grievances at step four of the grievance procedure and requested a hearing. Step four of the grievance procedure guaranteed only a written appeal to the Commissioner of Administration. Nevertheless, Kollodge was granted a hearing before hearing officer Marvin Hennen of the State's Division of Labor Relations on July 8, 1982 in Fairbanks. The hearing provided Kollodge with an opportunity to present his position. After receiving Hennen's report from the hearing, the designee of the Commissioner of Administration denied the grievance.

Kollodge requested the APEA to bring his grievances to arbitration in accordance with step five of the grievance procedure. The APEA decided not to pursue Kollodge's grievance to arbitration, citing the following reasons:

> There is substantially less than a 50% chance of success in arbitration. In reality the probabilities of success would be in the neighborhood of 10%. The State of Alaska has followed progressive discipline precisely. There is no procedural defect which APEA could attack through the arbitration process. The documentation in favor of the disciplinary procedures used by the State of Alaska is directly on target with progressive discipline, thereby leaving no technical arguments nor mitigating circumstances for us to successfully arbitrate your grievance.

As provided by the APEA bylaws, Kollodge appealed the decision not to arbitrate to the APEA's Northern Region Grievance Committee.

After a hearing before the three-member board, the Committee handed down its unanimous decision on January 23, 1983 refusing Kollodge's request to arbitrate his grievances. In a letter informing Kollodge of the Committee's decision, the Grievance Committee Chairman reminded Kollodge that he had five days to request a reconsideration by the Committee, but only if Kollodge discovered "new information or fraud or misinformation." Kollodge sent a letter to Watts, dated January 27, 1983, stating that he was going to "take APEA up on the offer" for a "final appeal." Kollodge then requested a copy of the hearing transcript and thirty-day extension to submit his petition for reconsideration.

Watts responded by letter dated January 31, 1983, denying Kollodge's request for a copy of the transcript because Kollodge had tape recorded the hearing himself. Watts also denied Kollodge's request for a thirty-day extension since Kollodge had the ninety days between the hearing and the time the decision of the Committee was rendered to review his tape recording and prepare an appeal. Kollodge never petitioned the Grievance Committee for reconsideration.

On April 25, 1984, Kollodge filed a complaint in the superior court against the State of Alaska, Cheek, Wilson and Carr, claiming statutory and contract causes of action and state and federal constitutional violations. On January 15, 1985 Kollodge filed his first amended complaint adding the APEA as a defendant. Kollodge claimed that the APEA breached its duty of fair representation. Each party moved for partial summary judgment. The Superior Court granted summary judgment in favor of the State and the APEA on the grounds that the statute of limitations had run on Kollodge's claims. Kollodge appeals from the judgment of the superior court.

1. Under the collective bargaining agreement, the grievance procedure for a termination of employment bypasses steps one and two and begins with step three. Thus, Watts began processing the termination grievance at step three.

## II.

■ We give *de novo* review to appeals from grants of summary judgment by the superior court. *State v. Jennings,* 555 P.2d 248, 250 (Alaska 1976). Drawing all factual inferences in favor of Kollodge, we affirm the summary judgment in favor of the State and the APEA only if "there is no genuine issue as to any material fact and ... the moving part[ies are] entitled to judgment as a matter of law." Alaska R.Civ.P. 56(c).

The superior court held that Kollodge's claims were barred by both the ninety-day statute of limitations applying to challenges of arbitration awards, AS 09.43.120, and the thirty-day period of limitations applying to appeals from administrative agency proceedings, Appellate Rule 602(a)(2).

The superior court found that the statute of limitations contained in AS 09.43.120(c), which requires a party to appeal an arbitration award "within 90 days after delivery of a copy of the award to the applicant," [2] applied to Kollodge's causes of action because "[Kollodge] is challenging the final result of the grievance process that would have led to an arbitration award had the Union felt his grievance was sufficiently meritorious to take to arbitration."

■ In reaching its conclusion, the superior court mistakenly relied on *United Parcel Service v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). Mitchell, through his union, challenged his termination through the grievance procedure contained in a collective bargaining agreement. Ultimately, the grievance was submitted to arbitration, and the arbitrators upheld the termination. Mitchell then brought suit against the union and his employer seventeen months later. The Court held that New York's ninety-day statute of limitations for actions to vacate arbitration awards applied to bar the plaintiff's suit under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). *Id.* at 63–64, 101 S.Ct. at 1564–1565, 67 L.Ed.2d at 740–41.

Kollodge, on the other hand, never went to arbitration. He was granted a hearing before the Commissioner of Administration under step four of the grievance procedure. Although the decision of the Commissioner had "the same force and effect as a decision or award of the arbitrator and [is] final and binding on each of the parties" according to step four of the grievance procedure, that hearing was not an arbitration. Thus, none of the provisions of the Uniform Arbitration Act as contained in AS 09.43.010–.180 applied to the hearing. Specifically, the ninety-day statute of limitations for vacation of arbitration awards did not apply to Kollodge's claims.

■ The superior court also held that Kollodge's claims were barred by the thirty-day period of limitations applying to appeals taken from an administrative agency to the superior court, Alaska R.App.P. 602(a)(2).[3]

---

**2.** AS 09.43.120 states:

(a) On application of a party, the court shall vacate an award if

(1) the award was procured by fraud or other undue means;

(2) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of a party;

(3) the arbitrators exceeded their powers;

(4) the arbitrators refused to postpone the hearing upon sufficient cause being shown for postponement or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of AS 09.43.050, as to prejudice substantially the rights of a party; or

(5) there was no arbitration agreement and the issue was not adversely determined in proceedings under AS 09.43.020 and the party did not participate in the arbitration hearing without raising the objection.

(b) The fact that the relief is such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

(c) An application under this section shall be made within 90 days after delivery of a copy of the award to the applicant. However, if the application is predicated upon corruption, fraud or other undue means by either the opposing party or an arbitrator, it shall be made within 90 days after the grounds are known or should have been known.

**3.** Appellate Rule 602(a)(2) states in pertinent part:

The time within which an appeal may be taken to the superior court from an administrative agency shall be 30 days from the date

We reviewed the thirty-day limit on filing appeals from administrative agencies in *Ballard v. Stich,* 628 P.2d 918 (Alaska 1981), a case directly on point. After a school district terminated Ballard from his position as a custodian, he registered a grievance with the school district administration seeking reinstatement and back pay. *Id.* at 919. The grievance was denied by the administration. Ballard requested and was granted a hearing before the school board to present his grievance. The school board affirmed the action of the administration. Ballard then filed a complaint in superior court seeking review of the school board's decision. The superior court granted summary judgment to the school board on the grounds that the claims were barred by the thirty-day period of limitations applying to appeals from administrative agency determinations. We addressed the issue of determining when an entity acts as an administrative agency such that it is subject to the thirty-day period of limitation:

> Whether Appellate Rule 45 [currently Appellate Rule 602(a)(2)] applies is not determined by labeling a case an appeal or a new proceeding. The essential question is a functional one: does the claim before the superior court challenge a prior administrative decision? If the answer is affirmative, Appellate Rule [602(a)(2)] applies.

*Ballard,* 628 P.2d at 920 (citing *Winegardner v. Greater Anchorage Area Borough,* 534 P.2d 541, 545 (Alaska 1975)). We further stated:

> [T]he test for determining when an entity is acting as an "administrative agency" is functional. Whenever an entity which normally acts as a legislative body applies policy to particular persons in their private capacities, instead of passing on general policy or the rights of individuals in the abstract, it is functioning as an administrative agency within the meaning of Appellate Rule [602(a)(2)].

*Id.* at 920. We concluded that the school board in *Ballard* was acting as an administrative agency because it was "applying general policy to a particular person." *Id.*

The same analysis applies to Kollodge. Kollodge's complaint, like Ballard's, requested reinstatement, back pay and compensatory damages.[4] Kollodge's relief in court turns on a review of the hearing conducted before hearing officer Hennen of the State Division of Labor Relations. In essence, this is an appeal of the decision rendered by the designee of the Commissioner of Administration which resulted from the Division of Labor Relations' hearing. Furthermore, the hearing involved the application of policy to a particular person (Kollodge) in his private capacity. Clearly, Kollodge's claim is an appeal from an administrative agency. Therefore, it is subject to the thirty-day period of limitation contained in Appellate Rule 602(a)(2).

After the hearing, the Department of Administration notified Kollodge of its decision in a letter dated July 26, 1982. The arbitration procedure mandated by step five of the grievance procedure was completed on January 23, 1983, the date of APEA's final decision not to arbitrate. Kollodge did not file his complaint in the superior court until April 25, 1984, long past the thirty-day limit.[5] Accordingly, we affirm the superior court's grant of summary judgment.[6]

that the order appealed from is mailed or delivered to the appellant.

**4.** Additionally, Ballard's complaint and appellate brief, like Kollodge's, alleged that he was denied his state and federal constitutional due process rights. Complaint at 3 ¶ 16, *Ballard v. Fairbanks North Star Borough School Dist.,* 4FA–78–1327 Civ.; Brief for Appellant at 13–20, *Ballard v. Stich,* 628 P.2d 918 (Alaska 1981). Thus, in *Ballard,* we implicitly held that a challenge to an administrative decision, even if it is a constitutional challenge, is subject to the thirty-day

period of limitation contained in Appellate Rule 602. *Ballard,* 628 P.2d 918.

**5.** We need not decide whether the limitation period began to run on July 26, 1982, the date of the final decision of the Department of Administration, or on January 23, 1983, the date of APEA's final decision not to arbitrate. Under either date, Kollodge exceeded the thirty-day limit contained in Appellate Rule 602(a)(2).

**6.** Appellate Rule 521 allows a court to relax the requirements of the other appellate rules, including Appellate Rule 602, "where a strict

### III.

A union has a duty to fairly represent its members. *See Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842, 850 (1967). A union breaches its duty of fair representation when its "conduct toward(s) a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190, 87 S.Ct. at 916, 17 L.Ed.2d at 857. Furthermore, a union does not breach its duty of fair representation merely by refusing to bring an employee's grievances to arbitration:

> Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement.

*Id.* at 191, 87 S.Ct. at 917, 17 L.Ed.2d at 858. To hold otherwise would greatly undermine the settlement machinery agreed to by the union and the employer as contained in the collective bargaining agreement. *See id.*

However, federal and Alaska law differ on the consequences which follow from a union's refusal to represent an employee. Under federal law the employee may not proceed directly against the employer without first proving a breach of the union's duty of fair representation. *Id.* Alaska law places no such impediment on an employee's right to obtain direct review of the employer's decision to terminate the employee. *Casey v. City of Fairbanks,* 670 P.2d 1133, 1138 (Alaska 1983). The employee may obtain review in superior court or process his agreement through arbitration if permitted by the contract or regulations. *Id.* at 1138–39. This right of direct review would seem to make the action for breach of the duty of fair representation of less critical importance in state law than in federal law.

Unions are given a reasonable amount of discretion in handling their members' grievances. *See Johnson v. United States Postal Service,* 756 F.2d 1461, 1465 (9th Cir.1985); *Tenorio v. N.L.R.B.,* 680 F.2d 598 (9th Cir.1982). A union acts arbitrarily if it acts without any rational basis, "if it simply ignores a meritorious grievance or handles it in a perfunctory manner." *Peterson v. Kennedy,* 771 F.2d 1244, 1254 (9th Cir.1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986); *see also Johnson,* 756 F.2d at 1465. A union has breached its duty of fair representation if it has demonstrated "an egregious disregard for the rights of union members." *Tenorio,* 680 F.2d at 601. However, although unions are not required to bring all grievances to arbitration, unions are obligated to expend at least a minimal amount of investigation and preparation of members' grievances. *Johnson,* 756 F.2d at 1465. The Washington Supreme Court has identified three elements of the duty of a public sector union:

> First, it must treat all factions and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the union must avoid arbitrary conduct.

*Allen v. Seattle Police Officers' Guild,* 670 P.2d 246, 253–54 (Wash.1983) (quoting *Griffin v. United Auto., Aerospace & Agric. Implement Workers,* 469 F.2d 181, 183 (4th Cir.1972)).

The superior court found that the APEA fairly represented Kollodge through the grievance procedure. After reviewing the record and finding no genuine issue of ma-

---

adherence to them will work surprise or injustice." Alaska R.App.P. 521. Kollodge has provided us with no reason to relax the thirty-day period of limitations, nor do we see any. Kollodge sat on his claim for eighteen months after receiving the final decision of the Commissioner of Administration and thirteen months after receiving the final word from the APEA with regard to his request for arbitration.

terial fact, we agree with the superior court.[7]

■ The union's decision not to bring Kollodge's grievances to arbitration was made after a careful review of the case. Specifically, Watts separately processed Kollodge's grievances through steps two and three of the grievance procedure. Additionally, at step four of the grievance procedure, Watts managed to get a hearing before the Commissioner of Administration even though the collective bargaining agreement did not provide for a hearing at this step. Prior to the hearing, Watts spent two afternoons with Kollodge preparing for the hearing and considerable time on his own.

After the Commission denied Kollodge's grievances at step four, Watts reviewed Kollodge's grievances with his Juneau supervisor, Darlene Livermore, and the two decided not to bring the grievances to arbitration under step five of the grievance procedure. Additionally, the APEA informed Kollodge of the specific reasons behind its decision, emphasizing the low probability of success and the State's compliance with disciplinary procedures.

The APEA offered Kollodge the right to appeal this decision. Kollodge appealed. The Northern Region Grievance Committee held a three-day hearing. At the hearing, Watts testified that, although he was of the opinion that Kollodge's termination was unfair, the APEA should not bring the grievances to arbitration because of the low probability of success. Over the course of this three-day hearing, Kollodge had the opportunity to fully argue his position before the APEA.

The Northern Region Grievance Committee affirmed the APEA's decision not to arbitrate Kollodge's grievances. Kollodge was given the opportunity to request reconsideration of the Committee' decision, but failed to make such a request.

Watts evidently stated that he believed Kollodge's firing was planned and contrived by the State and that Kollodge was treated unfairly by the State. Kollodge argues that these statements conflict with Watts' testimony at the Northern Region Grievance Committee Hearing where Watts recommended that the APEA deny Kollodge's request to arbitrate his grievance. This conflict, Kollodge argues, demonstrates the APEA's bad faith in handling his grievances.

■ We do not believe that Watts' statement that the State may have treated Kollodge unfairly is inconsistent with our holding that the APEA did not breach its duty of fair representation. The Supreme Court has noted "that a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious...." *Vaca*, 386 U.S. at 195, 87 S.Ct. at 919, 17 L.Ed.2d at 860. Furthermore, as noted above, the APEA has wide discretion in choosing whether to bring a grievance to arbitration. Thus, Watts could have held the belief that the State had treated Kollodge unfairly while at the same time realizing that the APEA would be better off not wasting its resources on arbitrating grievances having such a low probability of success. As Watts noted at the hearing, the State did "everything technically correct. They've dotted every 'i' and crossed every 't'." Thus, the APEA had the right to evaluate in good faith the merits of the grievances and to weigh this against the likelihood of success and the finite resources available to the union.

Additionally, Watts made his statements regarding the merit of Kollodge's claim while Watts was in a representative capacity as Kollodge's advocate. In that capacity, Watts was expected to make such protestations. In contrast, when he was testifying before the Northern Region Grievance Committee, Watts was not representing Kollodge. Instead, he was a witness obligated to express his truthful evaluation of Kollodge's grievance.

---

**7.** Thus, we need not determine what statute of limitations applies to duty of fair representation claims brought by an employee against a public sector labor union. *

Finally, we note that Kollodge himself has expressed satisfaction with how Watts processed his grievances. Kollodge testified at the Northern Region Grievance Committee that Watts had done a "whizbang job" handling his grievances. Kollodge stated: "I want to compliment you for what you have done on my behalf so far. I think you've done an excellent job in preparing for and helping me [through] Step 4." Kollodge expressed similar sentiments at his deposition, admitting that he worked "real closely" with Watts, and that Watts spent a considerable amount of time preparing for the step four hearing.

In sum, the APEA processed Kollodge's grievances in a professional manner, keeping Kollodge apprised of the status of his grievances at each step. The APEA refused to arbitrate Kollodge's grievances because it believed that in reality there was only about a 10% chance of success at arbitration. As a matter of law, the APEA acted reasonably and within its discretion in refusing to arbitrate the grievances and did not breach its duty of fair representation to Kollodge.

### IV.

Kollodge also argues that the APEA's handling of his grievances constitutes state action under the fourteenth amendment. However, nowhere in his briefs before this court does Kollodge argue that the APEA has violated any constitutional right.[8] The briefing on this issue by Kollodge is inadequate. Thus, we do not address this issue. *See State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 528 (Alaska 1980) ("[w]hen, in the argument portion of a brief, a major point has been given no more than cursory statement we will not consider it further").

We AFFIRM the superior court's grant of summary judgment in favor of the State and the APEA.

---

**8.** In his third amended complaint, Kollodge asserts that the APEA denied Kollodge due process of law under the federal and state constitutions when it refused to bring Kollodge's grievances to arbitration. Presumably, these are the constitutional violations which Kollodge intended to argue. However, Kollodge failed to make these arguments in his briefs.