Theresa **PEDERSON–SZAFRAN,**
Appellant,

v.

**Douglas B. BAILY, Attorney General of the State of Alaska, Frank Baxter, Commissioner of Administration of the State of Alaska; and State of Alaska, Appellees.**

No. S–4257.

Supreme Court of Alaska.

Aug. 14, 1992.

---

Robert M. Goldberg, Anchorage, for appellant.

Randy M. Olsen, Asst. Atty. Gen., Fairbanks, Charles E. Cole, Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

Theresa Pederson–Szafran (Szafran) appeals the dismissal of her complaint by the superior court. Szafran's complaint alleged wrongful termination and improper blacklisting from state employment and violation of her rights as an employee and citizen of the State of Alaska. She also claimed that she had exhausted her administrative remedies.

## FACTS & PROCEEDINGS

Szafran was hired on October 14, 1985 by the State of Alaska (State) to fill a paralegal position with the Department of Law in Barrow. In preparation for the job, Szafran was scheduled to receive training in the Fairbanks District Attorney's Office from October 14 through November 1, 1985. She was to report to work in Barrow on November 4, 1985.

Upon commencing her employment Szafran was on probation for twelve months. The state cites *Whaley v. State*, 438 P.2d 718 (Alaska 1968), and 2 AAC 07.415 for the proposition that during the probationary period Szafran could be terminated without cause for any reason except one due to racial, religious, or political discrimination.

On November 8, 1985, after three weeks of training and observation, Szafran was notified of her termination. Among the reasons given for her dismissal, her termination letter stated that "[d]uring your training you demonstrated a marked lack of interest in the specific duties you would be required to perform, frequently absented yourself and failed to pay attention, making you unable to demonstrate that you had absorbed the information imparted to you."

When Szafran was hired, probationary employees were covered by a collective bargaining agreement between the Alaska Public Employees Association (APEA) and the State of Alaska. The agreement provided that as a probationary employee she could grieve her termination through Step Four of the grievance process. Step Three involved review of the personnel decision by the department head of the hiring agency. Step Four involved review of the hiring agency's termination decision by the State's Department of Administration. Step Five provided for binding arbitration of all disputes under the agreement, except the termination of probationary employees.

Upon her request, APEA filed a grievance on Szafran's behalf. She alleged that her dismissal was based on the Department's unfair judgment of her performance during a training period which was disorganized and lacked supervision. At Step Three Szafran's grievance was denied by Harold Brown, the then Attorney General. A Step Four Hearing was requested by APEA and was conducted in Fairbanks on January 23 and 24, 1986. According to the Department of Administration's response to the APEA grievance, "[t]he purpose of the hearing was to determine the facts and circumstances involved in the termination of the grievant, Ms. Theresa Szafran." After taking evidence and testimony from both sides the hearing officer confirmed the termination.

Six weeks prior to Szafran's Step Four hearing, we held in *Hemmen v. State*, 710 P.2d 1001, 1003 (Alaska 1985), that despite union agreements to the contrary, all public employees' grievance procedures must have binding arbitration as a final step. However, following Szafran's Step Four hearing, APEA did not request binding arbitration under *Hemmen*. On February 19, 1986, Szafran was advised by the APEA that it had exhausted all remedies available to her as a terminated probationary employee.

On February 19, 1986, the Department of Administration issued a letter to Szafran stating that under the General Government Unit Agreement Articles 18.6.6 and 18.11.1, she could not exercise any rehire rights nor apply to have her name put on any eligible list for the classified state service until she could give references showing twelve months satisfactory service with another employer. Under the union agreement Szafran had a right to seek review of any restrictions on future state employment. The required "improved attitude evidence" was a condition which was subject to all of the grievance steps including binding arbitration. Szafran did not file a grievance of the decision by the Department of Administration.

On November 7, 1986, Szafran filed a complaint in the superior court in Nome alleging breach of her employment contract. Thereafter, the superior court granted the State's motion to transfer venue from Nome to Fairbanks. In her complaint Szafran stated that she had exhausted the administrative remedies provided for in the applicable collective bargaining agreement. Relying on *Kollodge v. State*, 757 P.2d 1028, 1033 (Alaska 1988), which held that a former employee disappointed by administrative remedies is in the posture of an appellant in the superior court, the State sought judgment on the pleadings pursuant to Rule 12(c) of the Alaska Rules of Civil Procedure. In response, Szafran filed an affidavit which stated: "By exhausting the administrative remedies I mean that I attempted to seek administrative relief but was denied relief and I was not a member of the union. I was denied relief as not being a member of the union and not entitled to grievance." Szafran's complaint was dismissed by the superior court for failure to establish the superior court's subject matter jurisdiction.

On appeal we held:

Here Szafran alleges that she was denied the right to utilize such administrative procedures. She further claims in her affidavit that the state-union contract does not afford her any grievance rights. Based on Szafran's affidavit, and the absence of any countervailing evidence, it appears that a grievance procedure was in fact not afforded to her. It follows under *Reed [v. Municipality of Anchorage*, 741 P.2d 1181 (Alaska 1987)] that the filing of an original action in the superior court was appropriate in this case. The superior court therefore erred in dismissing the complaint for lack of subject matter jurisdiction.

*Szafran v. State*, Mem.Op. & J. No. 452 at 7 (Alaska May 10, 1989). Following our remand, Szafran filed an amended complaint in which she conceded that she had received an administrative hearing at Step Four of the grievance process. She also alleged that the Department of Administration's decision to declare her ineligible for any state job until she had earned a favorable recommendation from a private employer was in violation of Alaska's constitution.

After establishing that Szafran had access to union assistance in processing union grievances, the State moved for summary judgment. Szafran filed a cross motion for summary judgment, arguing among other things, that she was entitled to five years of back pay until she was granted binding arbitration.

The superior court determined that Szafran had received an administrative hearing. Accordingly, the superior court ruled that its role should be that of an appellate court reviewing an administrative decision. *Kollodge v. State,* 757 P.2d 1028, 1033 (Alaska 1988). In this regard the superior court ruled in part that:

> here Theresa Pederson–Szafran, had a hearing step 4 before the hearing examiner as a designee of the Commissioner of Administration and the Commissioner of Administration made what the Supreme Court, under numerous cases, including [*Kollodge*] and *Ballard, Weingartner* and others, made an administrative decision. As such, and tied into the foundation of *Casey,* review could have been sought and was available with ... the Superior Court, but that review is governed by Rule 602 ... Rules of Appellate Procedure. The challenge to [the termination] had to be brought within 30 days of that administrative decision and it not having been done so, the challenge is untimely.

The superior court further concluded that summary judgment in favor of the State was appropriate as to Szafran's claim that the State had unlawfully blacklisted her. The superior court disposed of this claim on alternative grounds. First it concluded that Szafran's appeal of this issue was untimely. In so doing the superior court reasoned as follows:

> The question, therefore, remains is [Szafran] entitled to declaratory relief or court action challenging the period of ineligibility or does it too go the way of the discharge claim as this court has interpreted it? *[Szafran] argues that the discharge and the resulting con-*

*tractual ineligibility are inextricably bound together.* A review of termination involves a review of the propriety of the ineligibility and that they cannot be viewed separately. As such, the court must conclude that the review of the ineligibility likewise was subject to judicial review and that review is likewise untimely.

(Emphasis supplied.) The superior court further concluded, as an alternative rationale to Szafran's suggestion that the issues of termination and ineligibility (blacklisting) were "inextricably intertwined and that the challenge[d] hearing grievance appeal or other procedural devices arising from the termination were part and parcel and carried with it the ineligibility," that she had failed to exhaust her administrative remedies.

> If they were not tied together so that one carries with it the outcome of the other it was incumbent upon [Szafran] when she was advised either constructively [of] her termination and constructively of the ineligibility because it was in the contract, or specifically in February 1986, to challenge the applicability of the ineligibility as overly harsh or otherwise place in motion the steps of the dispute resolution mechanism. The court cannot find ... a request for arbitration after step 4 or request for any relief or resolution of the contractually imposed ineligibility provision.

Given the above holdings, the superior court further ruled that it was not necessary to reach the question of damages.

Szafran appeals from the grant of summary judgment.[1]

## I. WAS THE SUPERIOR COURT'S GRANT OF SUMMARY JUDGMENT TO THE STATE INCONSISTENT WITH SZAFRAN V. STATE, MO & J 452 (ALASKA MAY 10, 1989) (SZAFRAN I)?

Szafran asserts that when we first considered this matter in *Szafran I,* we sus-

---

1. Both parties agree that the supreme court standard of review of a superior court's conclusions of law is the independent judgment standard. *Foss Alaska Line, Inc. v. Northland Ser-* *vices, Inc.,* 724 P.2d 523 (Alaska 1986); *Walsh v. Emerick,* 611 P.2d 28 (Alaska 1980); *Guin v. Ha,* 591 P.2d 1281 (Alaska 1979).

tained her contention that she could bring an original action in superior court to protest her termination. Szafran argues that on remand, "no countervailing evidence was offered to demonstrate that Appellant was afforded a legally permissible grievance procedure." Szafran further contends that the only "new development" on remand was that the State conceded that she had an absolute right to have binding arbitration as a final step to a grievance process and that this was denied her.

Szafran asserts that in light of this court's rejection of *Kollodge v. State*, 757 P.2d 1028 (Alaska 1988), "in the context of this record," *Szafran I*, n. 2, the superior court erred by relying on that case and granting summary judgment to the State.

■ The State argues that *Szafran I* involved an order to dismiss based on the sufficiency of the pleadings and that this court's decision regarding jurisdiction was based on Szafran's affidavit that no administrative remedies were afforded her. Given the foregoing, the State notes that this court ruled, in *Reed v. Municipality of Anchorage*, 741 P.2d 1181, 1186–87 (Alaska 1987), that a terminated employee may bring an original action when administrative grievance procedures are not available. However, when grievance procedures are available, an employee must exhaust contractual or administrative remedies before pursuing a direct judicial action against the employer. *Casey v. City of Fairbanks*, 670 P.2d 1133, 1136 (Alaska 1983); *Beard v. Baum*, 796 P.2d 1344, 1348 (Alaska 1990).

The State asserts that its affirmative defense of failure to exhaust administrative remedies was not struck. The State further asserts that the remand from *Szafran I* had the purpose and effect of allowing the litigation to proceed past the pleading stage. Thus, the State contends that entertaining a motion for summary judgment on newly developed facts was not a violation of this court's remand following *Szafran I*.

■ In *Szafran I* this court reversed the superior court's order dismissing Szafran's complaint based on the following rationale:

In *Reed* it was explained that a plaintiff can bring an original action in the superior court to challenge a job termination where administrative grievance procedures are not made available to the employee. *Id.* Here Szafran alleges that she was denied the right to utilize such administrative procedures. She further claims in her affidavit that the state-union contract does not afford her any grievance rights. Based on Szafran's affidavit, and the absence of any countervailing evidence, it appears that a grievance procedure was in fact not afforded to her. It follows under *Reed* that the filing of an original action in the superior court was appropriate in this case.

*Szafran v. State*, Mem. Op. & J. No. 452, at 7 (Alaska May 10, 1989). However, following remand, Szafran filed an amended complaint conceding that she had received an administrative hearing at Step Four of the grievance process. Thus, Szafran's own amended complaint contradicts her assertion that on remand no new countervailing evidence was presented to demonstrate that she was afforded a legally permissible grievance procedure. In *Szafran I* we rejected the application of *Kollodge v. State*, 757 P.2d 1028 (Alaska 1988), to the case in the context of the record we then had before us. However, given Szafran's concession in her amended complaint that a grievance procedure was in fact afforded her, we conclude that *Kollodge* was correctly applied by the superior court. Therefore, we conclude that the superior court's grant of summary judgment to the State was not inconsistent with *Szafran I*.

## II. WAS THE SUPERIOR COURT'S GRANT OF THE STATE'S MOTION FOR SUMMARY JUDGMENT CORRECT?

The superior court concluded that Szafran had failed to file a timely appeal from the administrative determination of her wrongful termination and blacklisting claims under Appellate Rule 602(a)(2). Our review of the applicable case law and record persuades us that the superior court correctly determined this question.

In our view this issue is controlled by our decision in *Kollodge v. State*, 757 P.2d 1028, 1033 (Alaska 1988). There, quoting *Ballard v. Stich*, 628 P.2d 918, 920 (Alaska 1981), we noted that:

[T]he test for determining when an entity is acting as an "administrative agency" is functional. Whenever an entity which normally acts as a legislative body applies policy to particular persons in their private capacities, instead of passing on general policy or the rights of individuals in the abstract, it is functioning as an administrative agency within the meaning of Appellate Rule [602(a)(2) ].[2]

The collective bargaining agreement between the State and the APEA, at the time of Szafran's hire, provided that the grievance procedure was the sole means for settling disputes. As noted at the outset, upon Szafran's request the APEA commenced grievance procedures on her behalf and followed them up to and including Step Four. Further, at Step Four of the grievance procedure, a full evidentiary hearing was conducted to determine the facts and circumstances involved in Szafran's termination. The record shows that following the hearing officer's adverse decision on Szafran's alleged wrongful termination claim, Szafran failed to request binding arbitration and did not file her superior court action until November 7, 1986, some nine months after the conclusion of the grievance procedure. Under Appellate Rule 602, Szafran's challenge had to be brought within 30 days of the Step Four hearing officer's decision. Since Szafran failed to do so, we hold that the superior court properly granted summary judgment in the State's favor.[3]

Alternatively, we hold that even if the issues of termination and ineligibility or blacklisting are not viewed as inextricably intertwined, the superior court properly granted summary judgment to the State on the ground that Szafran failed to exhaust her administrative remedies concerning her blacklisting claim prior to seeking judicial review of that issue. *Casey v. City of Fairbanks*, 670 P.2d 1133, 1136 (Alaska 1983); *Beard v. Baum*, 796 P.2d 1344, 1348 (Alaska 1990).

AFFIRMED.

---

**2.** In *Kollodge* we said:

We concluded that the school board in *Ballard* was acting as an administrative agency because it was "applying general policy to a particular person." *Id.*

The same analysis applies to Kollodge. Kollodge's complaint, like Ballard's, requested reinstatement, back pay and compensatory damages. Kollodge's relief in court turns on a review of the hearing conducted before hearing officer Hennen of the State Division of Labor Relations. In essence, this is an appeal of the decision rendered by the designee of the Commissioner of Administration which resulted from the Division of Labor Relations' hearing. Furthermore, the hearing involved the application of policy to a particular person (Kollodge) in his private capacity. Clearly, Kollodge's claim is an appeal from an administrative agency. Therefore, it is subject to the thirty-day period of limitation contained in Appellate Rule 602(a)(2).

After the hearing, the Department of Administration notified Kollodge of its decision in a letter dated July 26, 1982. The arbitration procedure mandated by step five of the grievance procedure was completed on January 23, 1983, the date of APEA's final decision not to arbitrate. Kollodge did not file his complaint in the superior court until April 25, 1984, long past the thirty-day limit. Accordingly, we affirm the superior court's grant of summary judgment.
757 P.2d at 1033 (footnotes omitted).

**3.** Szafran raised other issues on appeal including claims that her due process rights were violated and that the superior court erred in failing to address the issue of damages. However, our conclusion that the superior court correctly granted summary judgment to the state because of Szafran's failure to file a timely administrative appeal, or to exhaust her administrative remedies, makes it unnecessary to address these issues.