[No. 13979–7–I. Division One. July 14, 1986.]

WILLIAM L. MCCONNELL, *Appellant,* v. THE CITY OF SEATTLE, *Respondent.*

*Lawrence Linville* and *Keller, Rohrback, Waldo, Hiscock, Butterworth & Fardal,* for appellant.

*Douglas N. Jewett, City Attorney, J. Roger Nowell, Assistant,* and *Lori Molander, Legal Intern,* for respondent.

JOHNSEN, J.*—William L. McConnell appeals the trial court's dismissal of his lawsuit against the City of Seattle for reinstatement to his position as a police officer and for damages. He alleges that the court erred in entering many of its findings of fact and most of its conclusions of law. He also alleges that the court erred in refusing to admit into evidence the City's answers to certain interrogatories. We affirm.

McConnell was hired by the Seattle Police Department in 1962. On April 1, 1981, a Disciplinary Action Report was filed against him for failing to report the use of force in an incident that occurred near the Kingdome. McConnell admitted that he knew about his rights to appeal and decided not to exercise them. At the time of the events here in question, he was assigned to school traffic safety.

On April 28, 1981, a doctor called the Department to report that he believed a 3–year–old patient had been sexually molested by McConnell at the day–care center run by McConnell's wife in their home. The parents of the victim also reported the incident to the Snohomish County Sher-

---

*Judge Oluf Johnsen is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

iff's Office. On April 29 and 30, members of the Department's Internal Investigations Section (IIS) discussed the case with personnel in the Department as well as the Snohomish County Prosecutor's and Sheriff's Offices.

On April 30, a Department lawyer advised acting police chief David Grayson that it would be appropriate to suspend McConnell pending further investigation by Snohomish County and the Department. Jim Yearby, the Department's personnel director, prepared a packet containing a Disciplinary Action Report, a personnel order suspending McConnell for 30 days without pay pending an investigation, the cancellation of McConnell's off–duty work permit, and a copy of McConnell's rights relating to suspension and discharge, including his right to appeal.

On the afternoon of April 30, McConnell was called to a meeting. Those present included Lieutenant Douglas Dills, the then–president of the Seattle Police Officers' Guild, who was there on behalf of McConnell. Grayson informed McConnell that he was accused of molesting small children at his wife's day–care in their home. McConnell was told that he was suspended without pay for 30 days pending an investigation. He was advised of his *Miranda* rights because the allegations were criminal and involved investigation by the Snohomish County Sheriff's Office. McConnell said that he did not wish to give a statement and that he wanted an attorney. Grayson pushed the papers prepared by Yearby over to McConnell. However, Grayson could not remember whether he picked them up. Dills testified that McConnell did look at some papers.

After the meeting was adjourned, Dills drove McConnell to his office. Dills informed McConnell that he would authorize the Guild to provide him with funds for an attorney and that he had a lot of options and decisions to make such as to "retire, vest, appeal, sue."

After April 30, the Department continued the investigation of the charges against McConnell. IIS reviewed statements made by 11 people and discussed the progress of the investigation with Snohomish County authorities. During

the course of this investigation more possible victims were discovered. On May 15, 1981, personnel in IIS met with Chief Fitzsimons to update and discuss the case. They then decided to monitor the Snohomish County investigation and the following week make a final decision on what action to take. Fitzsimons was following the case as closely as possible.

Several members of the Department testified that McConnell was not asked to make a statement at the April 30 meeting or at any other time during the investigation because of the criminal nature of the charges. Compelling a statement would have been a disservice to him, and no one wanted to jeopardize either his rights or the case in Snohomish County. McConnell testified that he was waiting for IIS to contact him. Had they done so, he would have voluntarily given a statement denying his guilt, but he never initiated any contact with the Department in this regard.

Fitzsimons decided to dismiss McConnell because the Department felt certain that the Snohomish County Prosecutor would file charges. Accordingly, on May 27, 1981, McConnell received by registered mail, return receipt requested, a personnel order notifying him that effective May 22, 1981, he had been dismissed from the Department in accordance with Seattle Police Department Manual § 1.08.010, Conduct Unbecoming an Officer. Received with the personnel order was a memo notifying McConnell of his right to appeal to the Public Safety Civil Service Commission. Attached to the memo were the applicable appeal procedures. At no time prior to the receipt of the personnel order was McConnell told that he would be dismissed, although Yearby had tried to reach him by telephone.

On June 1, 1981, McConnell applied for retirement because he stated that he had no other way to pay his expenses. He did not appeal to the Commission or ask for a hearing after either his suspension or dismissal because he believed that IIS was going to step forward to get his side of the story. In addition, he believed that he would be acquitted of the charges and the Department would rein-

state him.

On July 7, 1981, Fitzsimons and others decided that the case would be closed in view of the information in the file, McConnell's retired status, and the expiration of the time period in which McConnell could have filed an action to be reinstated. In early July 1981, two counts of indecent liberties were filed in Snohomish County. After a jury trial in November 1981, McConnell was acquitted of both counts.

On May 14, 1982, McConnell's attorney wrote the Department a letter requesting that it correct McConnell's record to show that he had been acquitted. McConnell expected the Department to reinstate him. The Department corrected his record, but it made no offer of reinstatement.

On July 14, 1982, McConnell filed a complaint against the City for reinstatement, retroactive compensation and benefits, damages for mental and physical suffering, and costs. The complaint alleged that the procedures used by the Department relating to his suspension and dismissal violated his due process rights, his rights under the Manual, and 42 U.S.C. § 1983. In its answer, the City alleged that by failing to exercise his rights to a disciplinary and/or Commission hearing, McConnell failed to exhaust his administrative remedies and waived his due process hearing requirements.

After a bench trial in August 1983, the court entered findings of fact and conclusions of law, and a judgment dismissing McConnell's case. The court concluded that (1) McConnell was not deprived of his due process rights; (2) he waived any right he had to hearings arising out of his suspension and discharge; (3) he was discharged in good faith for cause; (4) he had no right to a pretermination hearing; (5) his retirement rendered moot any issues arising out of his suspension and discharge; and (6) he was estopped from denying that his retirement voluntarily ended any entitlement to employment in the Department.

McConnell assigns error to 18 of the trial court's 29 findings of fact. An appellate court will not substitute its

judgment for that of the trial court if the trial court's findings are supported by substantial evidence. *Roeder Co. v. Burlington Northern, Inc.,* 105 Wn.2d 269, 274–75, 714 P.2d 1170 (1986); *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 575, 343 P.2d 183 (1959). More particularly, "[t]he scope of review on appeal is limited to determining whether the findings are supported by substantial evidence, and if so, whether the findings in turn support the trial court's conclusions of law and judgment." (Citations omitted.) *Brown v. Safeway Stores, Inc.,* 94 Wn.2d 359, 372–73, 617 P.2d 704 (1980); *Hughes v. King Cy.,* 42 Wn. App. 776, 779, 714 P.2d 316 (1986). We find substantial evidence in the record to support the court's findings of fact. The only issue, therefore, is whether the findings of fact support the court's conclusions of law.

We decide, first, whether the court correctly concluded that McConnell failed to exhaust his administrative remedies. The doctrine of exhaustion of administrative remedies provides that "'[i]n general, an agency action cannot be challenged on review until all rights of administrative appeal have been exhausted.'" *South Hollywood Hills Citizens Ass'n v. King Cy.,* 101 Wn.2d 68, 73, 677 P.2d 114 (1984) (quoting *Spokane Cy. Fire Protec. Dist. 9 v. Spokane Cy. Boundary Review Bd.,* 97 Wn.2d 922, 928, 652 P.2d 1356 (1982)); *Wright v. Woodard,* 83 Wn.2d 378, 381, 518 P.2d 718 (1974). The test for imposition of the doctrine is as follows:

> [A]dministrative remedies must be exhausted before the courts will intervene: (1) "when a claim is cognizable in the first instance by an agency alone"; (2) when the agency's authority "'establishes clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties"; and (3) when the "relief sought . . . can be obtained by resort to an exclusive or adequate administrative remedy".

*South Hollywood Hills Citizens Ass'n,* at 73 (quoting *State v. Tacoma–Pierce Cy. Multiple Listing Serv.,* 95 Wn.2d 280, 284, 622 P.2d 1190 (1980)).

Exceptions to the exhaustion requirement exist if (1) resort to the administrative procedures would be futile, (2) the party is challenging the constitutionality of the agency's action or of the agency itself, and (3) the aggrieved party has no notice of the initial administrative decision or no opportunity to exercise the administrative review procedures. *South Hollywood Hills Citizens Ass'n,* at 74.

At no time did McConnell attempt to appeal either his suspension or dismissal through the proper administrative channels. Citing *Patsy v. Board of Regents,* 457 U.S. 496, 73 L. Ed. 2d 172, 102 S. Ct. 2557 (1982), McConnell claims that because he was bringing his claim under 42 U.S.C. § 1983, he need not have exhausted his administrative remedies. The Court there held that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." *Patsy,* at 516. Other language of the case indicates that it is only when § 1983 actions are brought in federal courts that exhaustion of state administrative remedies is not required. *E.g., Patsy,* at 500–01. *Patsy* does not discuss state court § 1983 actions.

 Some jurisdictions apply the rule in *Patsy* to § 1983 actions brought in state courts. *E.g., Laurel Park, Inc. v. Pac,* 194 Conn. 677, 485 A.2d 1272, 1279 (1984); *Maryland Nat'l Capital Park & Planning Comm'n v. Crawford,* 59 Md. App. 276, 475 A.2d 494, 501, *cert. granted,* 301 Md. 249, 482 A.2d 904 (1984). Other jurisdictions have decided that exhaustion is still a prerequisite before § 1983 actions can be filed in state courts. These courts choose to find the rule in *Patsy* limited to § 1983 actions brought in federal court. *E.g., State ex rel. Basham v. Medical Licensing Bd.,* 451 N.E.2d 691, 694 (Ind. Ct. App. 1983); *see Kramer v. Horton,* 125 Wis. 2d 177, 371 N.W.2d 801, 806 (Ct. App. 1985). Courts in Washington have not yet decided whether to apply *Patsy* to § 1983 actions brought in state courts.[1]

---

[1] In *Orion Corp. v. State,* 103 Wn.2d 441, 693 P.2d 1369 (1985), the majority did not reach the issue, finding instead that resort to the available administrative

We believe the better view to be that exhaustion of remedies is a prerequisite before § 1983 actions can be filed in state courts. With this ruling, the recent case of *Payne v. Mount,* 41 Wn. App. 627, 705 P.2d 297 (1985) is dispositive of McConnell's claim. The facts of *Payne* are as follows:

Payne was a tenured deputy sheriff in Whatcom County. On September 24, 1981, Mount, the sheriff of the county, learned that Child Protective Services was investigating Payne for the possible sexual abuse of his 13–year–old stepdaughter. A detective in the sheriff's office investigated the charges, interviewing Payne and filing a written report on October 2, 1981. On October 7, 1981, Payne, his wife and his attorney all spoke to Mount. In a letter dated October 9, 1981, Mount discharged Payne. The letter did not specifically refer to the allegations of sexual abuse, but rather cited the reasons for discharge set forth in a Whatcom County Civil Service Commission rule and RCW 41.14.110, the statute addressing the grounds for depriving employees of a county sheriff of tenure. On November 2, 1981, Payne appealed his termination to the Whatcom County Civil Service Commission. The Commission denied his request as untimely. Payne was acquitted of indecent liberties in March 1982. When Mount refused to reinstate him, he filed suit, alleging that his termination had been unlawful and had violated his equal protection and due process rights under state and federal law. He, like McConnell, sought damages and reinstatement. Mount and Whatcom County moved for summary judgment, contending primarily that Payne had failed to exhaust his administrative remedies. The trial court granted the motion. Payne appealed on due process grounds. The court affirmed. *Payne,* at 628–32.

The court stated that the general rule in Washington is that when an adequate administrative remedy is provided, it must be pursued before courts will become involved. Civil

procedures would have been futile. *Orion,* at 444, 457. However, in a dissenting opinion Justice Dore stated that the holding in *Patsy* is limited to actions brought in federal courts. *Orion,* at 468–69 (Dore, J., dissenting).

service rules are generally adequate administrative remedies. *Payne,* at 632. Because Payne's case did not fall under any of the exceptions to the exhaustion requirement and the issues he raised were capable of being heard by the Civil Service Commission, the court affirmed the trial court's holding that Payne failed to exhaust his administrative remedies. *Payne,* at 633.

The court went on to discuss the applicability of the pretermination hearing requirements set out in *Cleveland Bd. of Educ. v. Loudermill,* 430 U.S. 532, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985),[2] but found that because Payne failed to pursue his administrative remedies *after* his termination, it perceived "no purpose to be served by . . . remanding for a pretermination hearing where Payne, by failing to pursue his administrative remedies, no longer has the ability to pursue the matter beyond an adverse result from a pretermination hearing." *Payne,* at 634.[3]

■ McConnell claims that throughout the suspension and dismissal episode he was not given proper notice either of the charges against him or of his procedural rights. The discussion in *Payne* of notice requirements is apposite. The court found that there is sufficient notice of an appeal deadline if the notice of discharge cites the applicable statute. Such notice is not preferable to express notification of an appeal period deadline, but it meets the minimum requirements of due process. *Payne,* at 635. Further, the court found that a notice of dismissal is not required to specifically set forth the reasons for dismissal as long as the person being dismissed knows why he or she is being dismissed and is not prejudiced by the general nature of the

---

[2]The Court there stated: "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." (Citations omitted.) *Loudermill,* at 546.

[3]The court noted that Payne's meeting with Mount on October 7 may have satisfied *Loudermill*'s pretermination hearing requirement. *Payne,* at 634 n.10.

notice. *Payne,* at 636.

McConnell received notice more than sufficient to satisfy the minimum requirements of due process. He knew why he was suspended and then dismissed (and the court correctly concluded this was done in good faith and for cause), and he was provided with copies of the applicable appeal procedures. In addition, both his nearly 20 years of experience as a police officer and the April 1, 1981 disciplinary action made McConnell aware that he had a right to appeal.

McConnell would be barred from recovery even if he were not required to exhaust his administrative remedies. *Punton v. Seattle Pub. Safety Comm'n,* 32 Wn. App. 959, 650 P.2d 1138 (1982), which he cites to support his claim that he was entitled to a pretermination hearing, is distinguishable. On September 22, 1980, Demus Punton was dismissed from his job as a Seattle police officer following an investigation of several charges, none involving felonious conduct. Punton was not advised of the charges or given a hearing prior to receiving his notice of dismissal. The court found lack of due process when the Department failed to provide him with a pretermination hearing according to its regulations. *Punton,* at 969. *Punton* is distinguishable because the officer there was not charged with a felony and both the Manual and the Guild contract do not provide for a pretermination hearing for an officer who is charged with or likely to be charged with a felony.[4]

*Williams v. Seattle,* 607 F. Supp. 714 (W.D. Wash. 1985), criticizes *Punton,* characterizing its analysis as "misguided". *Williams,* at 719. The court in *Williams,* distin-

---

[4]The Manual, § 1.09.040(4)(c)(3)(a), provides that when a complaint against an officer is classified as being sustained, "*Except in those cases where felony charges will be requested,* the accused has 48 hours, excluding weekends and holidays, from the time of notification in which to waive or exercise his/her right to a disciplinary hearing. . . ." (Italics ours.)

Article 3, § 1 of the Guild contract provides that "notwithstanding the hearing procedure enumerated in Appendix 'A', it is understood that if deemed appropriate by the Chief of the Department discipline or discharge may be implemented immediately."

guishing between what the procedures in the Manual require and what is required by due process, found that due process did not entitle Officer Williams, who had been demoted from sergeant to police officer, to a predemotion evidentiary hearing as provided for in the Manual. *Citing Cleveland Bd. of Educ. v. Loudermill, supra,* the court found Williams constitutionally entitled only to notice of the charge, an explanation of the evidence against him, and an opportunity to respond prior to the Chief's disciplinary decision, all of which he received. *Williams,* at 720–21. We note that while the officer in *Williams* was demoted, the two employees in *Loudermill,* like McConnell, were terminated.

Applying the analysis in *Loudermill* and *Williams* here, McConnell received notice of the charge and an explanation of the evidence against him at the April 30 meeting; he had ample opportunity to respond following that meeting; he obtained a lawyer; he had been advised of his right to a hearing before a Police department panel and the Commission, but instead he chose to retire. It was not until after he had been acquitted of the criminal charges in Snohomish County that he chose to pursue a § 1983 claim. McConnell received all of the process due him. He was not entitled to a pretermination hearing, and the trial court did not err in so concluding.

Finally, McConnell alleges that the trial court erred in refusing to admit certain of the City's answers to interrogatories. The admission or refusal of evidence lies largely within the sound discretion of the trial court, and the trial court's refusal to admit evidence will only be reversed upon a showing of manifest abuse of that discretion. *Maehren v. Seattle,* 92 Wn.2d 480, 488, 599 P.2d 1255 (1979), *cert. denied,* 452 U.S. 938 (1981); *Henderson v. Pennwalt Corp.,* 41 Wn. App. 547, 560, 704 P.2d 1256 (1985).

McConnell propounded a large number of interrogatories to the City, which together with the answers thereto encompass approximately 400 pages of clerk's papers. The trial court's usual ground for refusing to admit certain of

the City's answers was that they were irrelevant. After a careful examination of the interrogatories in question, we cannot say that the court abused its discretion. Given our disposition of the case, we do not reach the estoppel or mootness issues.

Judgment affirmed.

SWANSON and WEBSTER, JJ., concur.

Review denied by Supreme Court October 28, 1986.