Peter E. DIEDRICH,
Appellant/Cross–Appellee,

v.

CITY OF KETCHIKAN and Ketchikan Public Utilities,
Appellees/Cross–Appellants.

Nos. S–3568, S–3659.

Supreme Court of Alaska.

Jan. 25, 1991.

Rehearing Denied Feb. 20, 1991.

Jeffrey A. Friedman and Richard Friedman, Friedman & Rubin, Anchorage, for appellant/cross-appellee.

Mitchell A. Seaver, Deputy Mun. Atty., Ketchikan, for appellees/cross-appellants.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

RABINOWITZ, Justice.

Peter Diedrich was employed as a utilities engineer with Ketchikan Public Utilities ("City"). On September 22, 1986, Diedrich was asked to resign and refused to do so. On September 26, 1986, the City terminated Diedrich. Diedrich then appealed his termination to the City Personnel Board ("Board"). After the Board expressed concern about the lack of a prior written warning regarding Diedrich's unsatisfactory job performance, the City's notice of termination was rescinded. Diedrich returned to work on approximately December 26, 1986.

Five days after the Board began hearing Diedrich's appeal, on December 18, 1986, the Ketchikan City Council voted to delete funding for the position of Utilities Engineer, the position Diedrich held. Subsequently, on March 11, 1987, Diedrich was notified that he was terminated due to lack of funds for his position "beyond March 31, 1987." Diedrich then appealed this proposed termination to the Board, which upheld Diedrich's termination. On June 12, 1987, the Manager of Ketchikan Public Utilities advised Diedrich that he had reviewed the decision of the Board and concurred in the Board's decision, and he gave Diedrich notice of final termination.[1] Diedrich did not appeal the Manager's decision to the superior court.

Approximately fifteen months later, Diedrich filed a complaint in superior court. He alleged that the City had breached the covenant of good faith and fair dealing implied in his employment contract when it discharged him. Diedrich claimed the City discharged him in retaliation for appealing his termination to the Board in order to protect his contract rights. Furthermore,

---

1. This notice reads in full as follows:

June 12, 1987
Mr. Peter E. Diedrich
P.O. Box 7142
Ketchikan, Alaska 99901
Subject: Final Decision Regarding Layoff
Dear Pete:
On June 9, 1987, we received the Personnel Board's decision recommending that your layoff be upheld. I have reviewed that decision and the rest of the record concerning your appeal of your layoff. I concur in the Personnel Board's decision.

Therefore, pursuant to Section 3.23.6 of the Personnel rules, you are hereby given my final decision and notice regarding your layoff. Your last day of work as the Utilities Engineer will be June 15, 1987. Please meet with Roger Logan at your earliest opportunity so that arrangements can be made to reassign your outstanding duties or projects. Thank you in advance for your cooperation.
Very truly yours,
Ketchikan Public Utilities
Richard A. Southworth
Utilities Manager

he contended that the City had violated his constitutional rights to substantive due process (premised in part on 42 U.S.C. § 1983) by offering a pretext for his termination.

The City moved to dismiss Diedrich's complaint pursuant to Alaska Civil Rule 12(b)(6) on the ground that the complaint was the functional equivalent of an administrative appeal, and thus was untimely under Appellate Rule 602(a).[2] Diedrich opposed this motion on the grounds that treating this matter as an administrative appeal would deny him the right to a jury trial and equal protection of the law. The superior court construed the motion as one for summary judgment because it considered matters outside the pleadings in ruling on it. The court thereafter dismissed Diedrich's complaint without prejudice on the ground of untimeliness, permitting him to make a showing as to why the thirty day deadline of Appellate Rule 602(a)(2) should be relaxed. After Diedrich declined to file supporting papers, the dismissal was converted to a dismissal with prejudice.

On appeal, Diedrich argues that the superior court's rulings and ultimate dismissal of his complaint (1) unconstitutionally deprived him of a jury trial on his breach of contract claim, (2) erroneously considered his complaint as an administrative appeal, (3) denied him equal protection of the law, and (4) failed to apply a recent United States Supreme Court decision which held that courts may not require an exhaustion of state remedies precedent to the bringing of a 42 U.S.C. § 1983 claim in state court.

■ In its cross-appeal, the City contests the superior court's denial of attorney's fees. The City argues that the superior court should have (1) awarded the City attorney's fees incurred in defending against Diedrich's civil rights challenge because the action was "groundless, meritless, or unreasonable," (2) granted the City fees as a prevailing party under Civil Rule 82, and (3) stated its reasons for denying the City attorney's fees.[3]

## I. DID THE SUPERIOR COURT ERR IN TREATING DIEDRICH'S NON 42 U.S.C. § 1983 CLAIMS AS AN ADMINISTRATIVE APPEAL?

■ Any claim which is functionally an administrative appeal must be brought within the thirty day limit imposed by Appellate Rule 602(a)(2). *Haynes v. State, Commercial Fisheries Entry Comm'n,* 746 P.2d 892, 894 (Alaska 1987).[4] "However denominated, a claim is functionally an administrative appeal if it requires the court to consider the propriety of an agency determination." *Id.* at 893. The key question then is whether the claim challenges a prior administrative decision. *Ballard v. Stich,* 628 P.2d 918, 920 (Alaska 1981). A challenge to an administrative decision, even if based on constitutional grounds, is subject to the thirty day limita-

---

**2.** Appellate Rule 602(a) provides, in relevant part,

(2) The time within which an appeal may be taken to the superior court from an administrative agency shall be 30 days from the date that the order appealed from is mailed or delivered to the appellant.

The Ketchikan city clerk mailed a copy of the Board's final decision to Diedrich's attorney on June 9, 1987.

**3.** As noted previously, the superior court treated the City's motion to dismiss as one for summary judgment. In reviewing a grant of summary judgment, "we must determine whether there are any genuine issues of material fact, and whether the moving party is entitled to judgment as a matter of law." *Drake v. Hosley,* 713 P.2d 1203, 1205 (Alaska 1986) (citing *Moore v. State,* 553 P.2d 8, 15 (Alaska 1976)); *see also*

Alaska R.Civ.P. 56(c); Alaska R.Civ.P. 12(b). This review is *de novo. Kollodge v. State,* 757 P.2d 1028, 1032 (Alaska 1988).

As to the questions of constitutional law raised by Diedrich's appeal, our review is also *de novo. E.g., K & L Distributors, Inc. v. Murkowski,* 486 P.2d 351, 357 (Alaska 1971) (review of constitutional challenge to administrative determinations, while of limited scope, is *de novo* ). We apply an abuse of discretion standard in reviewing attorney's fees rulings. *E.g., Tobeluk v. Lind,* 589 P.2d 873 (Alaska 1979).

**4.** Citing *Owsichek v. State, Guide Licensing and Control Bd.,* 627 P.2d 616, 620 (Alaska 1981); *Winegardner v. Greater Anchorage Area Borough,* 534 P.2d 541, 545 (Alaska 1975). *See also Ballard v. Stich,* 628 P.2d 918, 920 (Alaska 1981); *State v. Lundgren Pac. Const. Co., Inc.,* 603 P.2d 889, 892-93 (Alaska 1979).

tion of Appellate Rule 602(a)(2). *Kollodge v. State*, 757 P.2d 1028, 1033 n. 4 (Alaska 1988).[5]

The superior court explicitly applied these precedents and concluded that Diedrich's complaint was functionally an administrative appeal. In so ruling, the superior court stated in part,

> There is no question [but that] in order to grant plaintiff relief in this case, the court or jury would have to determine that the agency action in this case was improper. That determination is precisely the determination that can be made only in an administrative appeal.

We are persuaded that the superior court did not err in reaching this conclusion. The superior court could have granted Diedrich his requested relief (money damages) only by finding that the Board erred either (1) in concluding that the City did not breach an express or implied covenant of its contract with Diedrich in terminating him,[6] (2) in concluding that there was no retaliatory discharge, or (3) in concluding that Diedrich's constitutional rights had not been violated in the layoff. Given the allegations of the complaint, the superior court could not have granted the requested relief without reversing the Board's determination. Therefore, Diedrich's superior court action, insofar as it encompassed non 42 U.S.C. § 1983 claims, was properly con-

sidered an administrative appeal by the superior court.[7]

Treated as an administrative appeal, Diedrich's claims were, in our view, appropriately dismissed as untimely. *See supra* note 2. Additionally, the superior court afforded Diedrich a second opportunity to "file and serve a brief on the issue of whether App.R. 602(a)(2) should be relaxed...." Diedrich elected not to respond to this suggestion. Under the circumstances, we conclude that the City was entitled to judgment on all claims other than Diedrich's 42 U.S.C. § 1983 claims.[8]

## II. WOULD TREATING DIEDRICH'S SUPERIOR COURT ACTION AS AN ADMINISTRATIVE APPEAL VIOLATE ANY PROVISION OF THE STATE OR FEDERAL CONSTITUTION?

### A. *Right to Trial by Jury.*

■ Diedrich argues that to treat his action in superior court as an administrative appeal would violate his right to trial by jury guaranteed by the federal and state constitutions. The Alaska Constitution preserves the right of trial by jury as it existed at common law.[9]

However, this court has recognized that "[n]ot all issues of fact arising in a legal action must be tried by a jury." *Benson v.*

---

**5.** In *Kollodge* we stated,

> Additionally, Ballard's complaint and appellate brief, like Kollodge's, alleged that he was denied his state and federal constitutional due process rights.... Thus in *Ballard*, we implicitly held that a challenge to an administrative decision, even if it is a constitutional challenge, is subject to the thirty-day period contained in Appellate Rule 602.

757 P.2d at 1033 n. 4.

**6.** That is, it either failed to follow personnel rules for the layoff or it breached the implied covenant.

**7.** We have recognized an exception to the aforementioned precedents regarding treatment of an action as an administrative appeal, but that exception is not applicable in this case. In *Owsichek*, 627 P.2d at 619, we held that while a claim for damages resulting from an administrative order must be treated as an administrative appeal, a request for a declaratory judgment as to the constitutionality of the statutes

and regulations governing the administrative agency states an independent action not subject to the thirty day limitation. However, this exception does not apply to the instant case since Diedrich raises no challenge to the constitutionality of the statutes empowering the Board to conduct hearings and make determinations; rather, he challenges only the determination itself, both procedurally and on its merits.

**8.** Any language to the contrary contained in *Skagway City School Bd. v. Davis*, 543 P.2d 218 (Alaska 1975), is overruled.

**9.** The Alaska Constitution states, "[i]n civil cases where the amount in controversy exceeds two hundred fifty dollars, the right of trial by a jury is preserved to the same extent as it existed at common law." Alaska Const. art. I, § 16. However, "although the United States Constitution provides a civil jury trial right, it does not apply to the states." *Benson v. City of Nenana*, 725 P.2d 490, 491 n. 2 (Alaska 1986) (citing *Curtis v. Loether*, 415 U.S. 189, 192 n. 6, 94 S.Ct. 1005, 1007 n. 6, 39 L.Ed.2d 260 (1974)).

*City of Nenana,* 725 P.2d 490, 491 (Alaska 1986) (citing 5 J. Moore, J. Lucas and J. Wicker, *Moore's Federal Practice* § 38.38[4] at 38–339 (2d ed. 1985)). In *Benson,* an injured party had claimed that he was an independent contractor and not an employee for purposes of workers' compensation. We held that this question of fact was properly resolved by the court, citing cases which in general held that questions arising under statutory actions, as opposed to common law, were decided by the court. *Id.* at 492.

Similar reasoning has prompted other courts to reject claims to a right to a trial by jury in wrongful discharge actions against a government employer. *See, e.g., Skinner v. Angliker,* 211 Conn. 370, 559 A.2d 701 (1989) (no right to trial by jury where cause of action against state for wrongful discharge would have been barred under common law by sovereign immunity); *Abbamont v. Piscataway Township Bd. of Educ.,* 238 N.J.Super. 603, 570 A.2d 479 (App.1990) (no right to jury trial in statutory cause of action for wrongful termination by government employer).

In *City of Helena v. District Court,* 166 Mont. 74, 530 P.2d 464 (1975), a police officer requested a jury trial as part of judicial review of the police commission's disciplinary action against him. In rejecting that request, the Montana Supreme Court wrote:

> Authorities for other states relative to the review provided city employees, and specifically police officers, after a suspension, discharge, or other disciplinary proceeding, are in accord. *No case providing a jury trial for such review has been called to our attention by counsel, nor has any been found by us.*

*Id.* 530 P.2d at 465 (emphasis added).

■ When an employee enters into a contract that contains grievance proce-

dures, it is not a denial of the right to a jury trial to require the employee to follow those procedures. Thus, the court in *Carlson v. Hutzel Corp.,* 183 Mich.App. 508, 455 N.W.2d 335 (1990), reversed submission of a wrongful discharge claim to a jury because "the grievance and arbitration procedure was a part of plaintiffs' employment contract, and, as such, was plaintiffs' sole remedy." *Id.* 455 N.W.2d at 336.[10] Similarly, the provisions for administrative review provided by the City became part of Diedrich's contract. When Diedrich agreed to accept employment with the City, he waived any residual right he had to demand a jury trial for an alleged breach of the employment contract. *See, e.g., Graham v. State Farm Mut. Auto Ins. Co.,* 565 A.2d 908, 912 & n. 4 (Del.Supr.Ct.1989) (agreeing to insurance contract containing arbitration clause waived right to jury trial). Given the foregoing, we conclude that the Alaska Constitution does not require granting Diedrich a jury trial on the issues which were litigated before the Board.

Further, Diedrich's own arguments show that due process was not offended by the superior court's ruling. Proceedings before the Board were quasi-judicial, including discovery, the presentation of evidence, and the calling and cross-examination of witnesses. The cases are in agreement that "some kind of hearing" is required before a public employee may be deprived of her employment. *E.g., Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). This mandated hearing has not been held to require a jury trial. *Id. See also Kenai Peninsula Borough Bd. of Educ. v. Brown,* 691 P.2d 1034 (Alaska 1984). Here we conclude that the hearing accorded Diedrich before the Board met and exceeded constitutional minimum standards of due process.

---

**10.** *See also Leaon v. Washington County,* 397 N.W.2d 867, 874 (Minn.1986) (when employment contracts provide for grievance procedures, such procedures become the exclusive remedy, unless resort to the process would be futile); *Renny v. Port Huron Hosp.,* 427 Mich. 415, 398 N.W.2d 327, 336–37 (1986) (employer may "avoid jury review of an employee's termi-

nation by establishing an alternative method of dispute resolution" if that alternative affords procedural protections); Annotation, *Exhaustion of Grievance Procedures or of Remedies Provided in Collective Bargaining Agreement as Condition of Employee's Resort to Civil Courts for Assertedly Wrongful Discharge,* 72 A.L.R.2d 1439 (1984).

B. *Right to Equal Protection of the Laws.*

■ Diedrich next contends that denying him the right to bring an independent cause of action based on his termination violates the equal protection clause, since private sector employees have a right to initiate post-termination proceedings in the trial courts of Alaska. The superior court rejected this argument. We are unpersuaded that the superior court erred in this ruling.

Private sector employees in positions comparable to Diedrich's—that is, those whose employment contracts include provisions providing for arbitration—are not treated differently from Diedrich. Both private and public employees must exhaust administrative remedies prior to obtaining judicial review of the particular administrative determination. Thus, we conclude that requiring public employees to bring a timely administrative appeal as a prerequisite to invoking the appellate jurisdiction of the superior court does not create a denial of equal protection. *Cf. Keyes v. Humana Hosp. Alaska, Inc.,* 750 P.2d 343, 358 (Alaska 1988); *Casey v. City of Fairbanks,* 670 P.2d 1133, 1139 (Alaska 1983).

## III. DIEDRICH'S SECTION 1983 CLAIM.

■ Diedrich grounded his constitutional claims in part on the provisions of 42 U.S.C. § 1983. As noted above, the superior court dismissed all of Diedrich's claims, including the constitutional civil rights claim, on the ground that Diedrich failed to timely appeal the Board's administrative determination. Diedrich argues that federal law does not permit states to require exhaustion of administrative remedies as a prerequisite to the maintenance of a section 1983 claim.[11] More specifically, Diedrich contends that a recent decision of the United States Supreme Court controls the point. On the basis of this authority, he argues that he need not comply with the procedural requirement of Appellate Rule 602(a)(2) prior to institution of a section 1983 action in the superior court of Alaska. We agree.

In *Patsy v. Board of Regents of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), the Supreme Court of the United States held that a plaintiff need not exhaust state administrative remedies before instituting a section 1983 suit in federal court. In *Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988), the Supreme Court expanded this holding to section 1983 litigation commenced in state courts. In *Felder,* the Supreme Court invalidated application of a Wisconsin law requiring the filing of a 120 day notice of claim by a section 1983 plaintiff. *Id.* In so holding, Justice Brennan, writing for the majority, wrote,

> ... States retain the authority to prescribe the rules and procedures governing suits in their courts. As we have just explained, however, that authority does not extend so far as to permit States to place conditions on the vindication of a federal right.... Given the evil at which the federal civil rights legislation was aimed, there is simply no reason to suppose that Congress meant "to provide these individuals immediate access to the federal courts notwithstanding any provision of state law to the contrary," yet contemplated that those who sought to vindicate their federal rights in state courts could be required to seek redress in the first instance from the very state officials whose hostility to those rights precipitated their injuries.

*Id.* at 147, 108 S.Ct. at 2311 (citations and footnote omitted). Thus, today "the extent to which a plaintiff in a § 1983 action must comply with the procedural preconditions established by state law is a subject gov-

11. The superior court denied that federal precedent controlled this issue, stating,

Plaintiff argues, finally, that federal law permits the 1983 claims without appealing the final administrative action. *Patsy v. Board of Regents,* 457 U.S. 496 [102 S.Ct. 2557, 73 L.Ed.2d 172] (1982). Plaintiff is correct. However, there is a split of authority in the state courts that have spoken on the subject.

I choose to adopt the analysis of the Washington Supreme Court in *McConnell v. City of Seattle* [44 Wash.App. 316], 722 P.2d 121 (Wash.App.1986), and the Wisconsin Supreme Court in *Kramer v. Horton* [128 Wis.2d 404], 383 N.W.2d 54 (Wis.1986), and this court holds that plaintiff's 1983 claims are barred, absent some reason to toll the 30-day limit.

erned by federal law." *Montoya v. City of Colorado Springs,* 770 P.2d 1358, 1364 (Colo.App.1989).[12]

In *Montoya,* the Colorado Court of Appeals concluded, in a situation procedurally similar to that presented in this appeal, that, "[h]ence, quite irrespective whether state law would have required Montoya to appeal the Director's administrative decision before instituting an action based upon state law, he was not required to exhaust any state remedy before instituting suit under § 1983." *Id.* at 1364–65.[13] Thus, we conclude that Diedrich's argument, that he need not comply with state procedural law in seeking a judicial resolution of his section 1983 claims, is correct.[14]

█ Our holding that *Felder* controls is not dispositive of Diedrich's section 1983 claim. We must consider the City's further contention that under the reasoning of the Ninth Circuit's opinion in *Eilrich v. Remas,* 839 F.2d 630 (9th Cir.1988), Diedrich's section 1983 claims should be dismissed. In that case, Eilrich, a police officer, administratively appealed his discharge. After an administrative hearing, his appeal was denied. Eilrich then filed a section 1983 action in federal court without first taking an appeal from the adverse administrative decision. The issue before the Ninth Circuit was whether collateral estoppel barred consideration of the section 1983 claim because the same issues were resolved in a prior unreviewed administrative proceeding. In concluding that Eilrich's section 1983 claim was barred, the Ninth Circuit said,

> Similarly, in the present case, Eilrich was afforded a 14–day proceeding resembling a trial, documented by an eleven-volume transcript. Under Cal. Gov't Code § 11513, both sides were entitled to call, examine and cross-examine witnesses under oath or affirmation. At the hearing, both parties were represented by counsel, twenty-one sworn witnesses testified, subpoenas were issued, and both parties presented oral argument and written memoranda. Both sides briefed the first amendment issue, the hearing officer considered these arguments and applied the appropriate legal standards to the facts surrounding Eilrich's statements and discharge. In addition, because the hearing officer applied an established rule to specific existing facts rather than establishing a rule of law applicable to future cases, he acted in a judicial capacity. Clearly, Eilrich had an adequate opportunity to litigate his first amendment claim with these procedures.

*Id.* at 634 (citations omitted).

Our review of the record persuades us that Diedrich was afforded ample opportu-

**12.** In *Donnelly v. Yellow Freight System, Inc.,* 874 F.2d 402 (7th Cir.1989), the court expressly overruled its previous decision holding that a state court filing would fail to toll Title VII's ninety day filing period if the plaintiff failed to exhaust state administrative remedies. *Id.* at 409. Similarly, in *Joshua v. Newell,* 871 F.2d 884 (9th Cir.1989), the Ninth Circuit Court of Appeals held "that the Washington notice of claims statute does not apply to section 1983 claims brought in federal court." *Id.* at 886.

**13.** Cases relied on by the superior court as authority for a contrary proposition predate *Felder.* In *McConnell v. City of Seattle,* 44 Wash. App. 316, 722 P.2d 121 (1986), for instance, the Washington Court stated that "Courts in Washington have not yet decided whether to apply *Patsy* to § 1983 actions brought in state courts. We believe the better view to be that exhaustion of remedies is a prerequisite before § 1983 actions can be filed in state courts." *Id.* 722 P.2d at 125 (footnote omitted). *Felder* appears to have settled this issue conclusively. Thus, the superior court's reliance on such cases was misplaced.

The City also relied on *Bettencourt v. Board of Registration in Medicine,* 721 F.Supp. 382 (D.Mass.1989). In *Bettencourt,* the federal district court refused to allow the plaintiff to relitigate the merits of a section 1983 claim because the same allegations were or should have been raised before the Massachusetts Supreme Judicial Court. The case cannot be read to stand for the proposition that a federal court will require exhaustion of state administrative remedies after *Felder,* which is apparently the City's view of the case.

**14.** The City's and superior court's view that "[t]his is not an exhaustion of administrative remedies case" misses the point in light of *Felder.* The broad language of *Felder* questions the applicability of state procedural requirements in section 1983 actions in state court *per se.* That Diedrich has been through all state *administrative* proceedings is irrelevant; the issue remains whether his failure to timely appeal may be treated as conclusive for purposes of his section 1983 claim after *Felder.*

nity to litigate his termination before the Board.[15] The allegations contained in Diedrich's complaint are essentially the same as the issues Diedrich presented to the Board. Thus, it is clear that the issue preclusion principles of *Eilrich* would bar Diedrich's claims if they were brought in federal court.[16] In our view, no distinction should be made because the instant section 1983 action was instituted in the superior court of this state, rather than in federal district court.[17]

Inherent in our conclusion that the principles of *Eilrich* are equally applicable to a section 1983 claim brought in state court is our rejection of Diedrich's arguments that the Board was not a neutral body, and that the Board lacked the expertise to decide breach of contract and civil rights claims.[18]

## IV. THE CROSS–APPEAL

### A. Did The Superior Court Abuse Its Discretion In Refusing To Award Attorney's Fees To The City?

In its cross-appeal, the City contests the superior court's denial of attorney's fees.

#### 1. Meritless Section 1983 Claim.

The City acknowledges that a victorious civil rights defendant is not enti-

tled to fees as a matter of course, but rather only when plaintiff's claims are found to be "unreasonable, frivolous, meritless, or vexatious."[19] The primary reason advanced by the City for concluding that Diedrich's section 1983 action fell below this standard is that our precedents clearly establish that administrative appeals, however denominated, are subject to the time limitation of Appellate Rule 602(a)(2). *Kollodge v. State,* 757 P.2d 1028 (Alaska 1988).

However, *Felder* modifies *Kollodge* insofar as the latter is applied to federal civil rights claims brought under section 1983 in state courts. Thus, Diedrich's argument for an independent civil rights action cannot be characterized as unreasonable, meritless, or frivolous. Furthermore, there is no argument that the action was motivated by vexatiousness. Additionally, we note that the City did not request attorney's fees under 42 U.S.C. § 1988. Instead, the City relied solely upon Civil Rule 82 in support of its request for attorney's fees before the superior court. Given this record, we cannot conclude that the superior court abused its discretion in refusing to award attorney's fees to the City with respect to Diedrich's section 1983 claims.[20]

**15.** Section 4–2 of the Home Rule Charter of the City of Ketchikan provides as follows:

> There shall be a personnel board consisting of three members appointed by the council for overlapping six-year terms.... A member may not hold any other office or position in city government. The council, by vote of at least five members after adequate opportunity for a public hearing, may remove a member for the good of the service....

**16.** *See University of Tenn. v. Elliot,* 478 U.S. 788, 796–97, 106 S.Ct. 3220, 3224–25, 92 L.Ed.2d 635 (1988) (unreviewed administrative fact finding has preclusive effect in subsequent section 1983 action); *see also Gahr v. Trammel,* 796 F.2d 1063, 1069 (8th Cir.1986) (state court judgment precludes relitigation of factual issues in a section 1983 claim, even though state court did not review fact finding of administrative board *de novo*).

**17.** *See Shoemaker v. City of Bremerton,* 109 Wash.2d 504, 745 P.2d 858 (1987) (factual decision by civil service commission, that police officer's reduction in rank was not retaliatory,

was given collateral estoppel effect in subsequent section 1983 action).

**18.** In *Jeffries v. Glacier State Tel. Co.,* 604 P.2d 4, 8 (Alaska 1979), we said,

> Although the principles of issue preclusion have been developed in a judicial setting, we agree with the modern and now generally accepted view that the doctrine of res judicata may be applied to adjudicative determinations made by administrative agencies.

**19.** *See, e.g., Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). Attorney's fees in civil rights cases are governed by federal law.

**20.** We reject the City's argument that because Diedrich was afforded due process at the Board's hearing, his civil rights challenge was frivolous. Diedrich's section 1983 challenge contests, in part, the state's power to substitute an administrative hearing for a judicial trial on his section 1983 claims. Thus, Diedrich's claim may well have merit even if it is assumed that Diedrich received a pretermination hearing consistent with the requirements of due process.

### 2. Civil Rule 82 Attorney's Fees.

 The City also argues that it should have been awarded attorney's fees under Civil Rule 82 since it "prevailed in the main issues in this litigation." The City contends that "[s]ince Diedrich's complaint was dismissed, it is clear the City was the prevailing party in this matter."

The superior court, in dismissing Diedrich's action, treated it as an administrative appeal. Thus, the Appellate Rules, not the Civil Rules, govern the award of attorney's fees in regard to Diedrich's non section 1983 claims. *See Rosen v. State Bd. of Public Accountancy*, 689 P.2d 478, 480 n. 3 (Alaska 1984); *Kodiak Western Alaska Airlines, Inc. v. Bob Harris Flying Serv., Inc.*, 592 P.2d 1200, 1204 (Alaska 1979).[21] The City did not seek attorney's fees under Appellate Rule 508(e).[22] Therefore, we conclude that the superior court did not abuse its discretion in refusing to award attorney's fees under Civil Rule 82.

### B. Did The Superior Court Err In Not Stating Its Reasons For Denying Attorney's Fees?

The superior court denied the City's request for attorney's fees pursuant to Civil Rule 82 without stating its reasons for the denial. This omission was not error in light of our conclusion that Appellate Rule 508(e), rather than Civil Rule 82, controls any award of attorney's fees when the superior court determines an administrative appeal.

We have previously remanded a case in which the superior court, acting in its appellate capacity, did not award attorney's fees because "we [could not] determine whether the superior court was exercising its discretion when it denied an award of

fees and costs...." *Conway, Inc. v. Ross*, 627 P.2d 1029, 1032 (Alaska 1981). Here, we think fairness dictates that the attorney's fees question should be remanded to the superior court for its determination as to whether any attorney's fees should be awarded to the City pursuant to Appellate Rule 508(e).

AFFIRMED and REMANDED for further proceedings pursuant to Appellate Rule 508(e).

---

21. In *Kodiak Western*, we faced an issue substantially similar to that presented here. We said,
    Harris has cross-appealed from the superior court's denial of attorney's fees. It is important to observe that this was an appeal to the superior court from the determination of an administrative agency.... In such an appeal we believe that Civil Rule 82, which governs attorney's fees in civil cases, has no application.
592 P.2d at 1204.

22. Appellate Rule 508(e) provides,
    Attorney's fees may be allowed in an amount to be determined by the court. If such an allowance is made, the clerk shall issue an appropriate order awarding fees at the same time that an opinion or an order under Rule 214 is filed. If the court determines that an appeal or cross-appeal is frivolous or that it has been brought simply for purposes of delay, actual attorney's fees may be awarded to the appellee or cross-appellee.