**John LINDEKUGEL, Appellant,**

v.

**FLUOR ALASKA, INC., Alaska Pacific Assurance Co., and the Alaska Workers' Compensation Board, Appellees.**

**No. S–7360.**

Supreme Court of Alaska.

March 28, 1997.

William J. Soule, Law Office of William J. Soule, Anchorage, for Appellant.

Randall J. Weddle, James E. Hutchins, Faulkner, Banfield, Doogan & Holmes, Anchorage, for Appellees Fluor Alaska, Inc., and Alaska Pacific Assurance Co.

Before COMPTON, C.J., RABINOWITZ, MATTHEWS, and EASTAUGH, JJ.

### OPINION

MATTHEWS, Justice.

On August 26, 1976, John Lindekugel suffered a serious back injury while working for Fluor Alaska.[1] Lindekugel and Fluor entered into a compromise and release on May

---

1. Fluor was insured by ALPAC/INA for workers' compensation purposes.

21, 1979, settling Lindekugel's various disability claims for a lump sum payment of $225,000. The compromise and release explicitly preserved Fluor's obligation to pay future medical benefits. It was approved by the Board.

In 1981 Lindekugel went to work for George Easley Construction Company. On October 8th of that year he reinjured his back when he slipped while carrying a heavy sheet of plywood. In March of 1983, he filed an application for adjustment of claim against Fluor and Easley, seeking medical cost reimbursement from Fluor and Easley and disability payments from Easley. The claim referred to both accidents. It came on for hearing on May 12, 1983. At the hearing, but out of the presence of Lindekugel, Gil Johnson, attorney for Lindekugel, announced his desire to dismiss the claim against Fluor, stating that a settlement had been reached with Easley although a compromise and release form putting the terms of the settlement in writing had not been drafted. The hearing chairman indicated that the hearing would be continued until the compromise and release form was submitted for approval. Randall Weddle, attorney for Fluor, objected to continuing the hearing, since he had an out-of-state medical witness ready to testify. Weddle requested an immediate dismissal with prejudice of the claim against Fluor. After an off-the-record discussion, Johnson agreed to dismiss the claim against Fluor with prejudice. After further discussion the chairman stated: "Dismiss [Fluor] with prejudice. Okay. Thank you." The chairman then stated that the hearing was continued with respect to the Lindekugel/Easley claim until the compromise and release "was worked out."

As it turned out, quite a bit of working out was necessary. The Lindekugel/Easley compromise and release was finally filed in 1990. It proposed that Easley would pay Lindekugel $45,000, reciting that Easley had already paid $21,665.85. The compromise and release provided that Easley would not be responsible for "current or future medical benefits" for Lindekugel.

The Board disapproved of the Lindekugel/Easley compromise and release. In a written opinion dated February 6, 1991, the Board noted many deficiencies in the compromise and release—notably it failed to describe at least five surgeries performed on Lindekugel after January 14, 1983. The Board concluded that the compromise and release was not in Lindekugel's best interest. In so concluding the Board stressed the public purpose rather than private rights aspect of workers' compensation, quoting Professor Larson's treatise on Workmen's Compensation Law as follows:

> [T]he underlying issue is once more the choice between viewing a compensation claim as a sort of private tort right and recognizing the social-protection character of the compensation system. If one thinks of a compensation claim as a private, personal, adversary money claim against the particular employer and his insurance carrier, one will go [on] to conclude, as the Kansas court did, that "workmen are not in any respect under guardianship or other disability; they and their employers are free agents; they may release their employers from liability for injuries on any agreed terms set forth." What this overlooks is that the entire compensation system has been set up and paid for, not by the parties, but by the public. The public has ultimately borne the cost of compensation protection in the price of the product, and it has done so for the specific purpose of avoiding having the disabled victims of industry thrown on private charity or public relief.... To this end, the public has enacted into law a scale of benefits that will forestall such destitution. It follows, then, that the employer and employee had no private right to thwart this objective by agreeing between them on a disposition of the claim that may, by giving the worker less than this amount, make him a potential public burden. The public interest is also thwarted when the employer and employee agree to a settlement which unnecessarily increases the cost of the product by giving the worker more than is due.
>
> ....
>
> As against this, it is often argued that to permit compromise will enable claimants to get at least something in the many contro-

versial cases where there is serious doubt whether fundamental conditions of liability can be established. But again it must be stressed that the objective of the legislation is not to see how much money can be transferred to workmen as a class; it is to ensure that those with truly compensable claims get full compensation. If there is doubt about the compensability of the claim, the solution is not to send the claimant away half-compensated; but to let the Compensation Board decide the issue. That is the Board's job.

The Board was specifically concerned about the waiver of future medical benefits, quoting Professor Larson to the effect that an employee should almost never be permitted to waive them:

A settlement ordinarily stops only the claimant's rights to weekly income benefits and does not affect his rights to future medical benefits.... This strictness is well justified, since it is difficult to imagine why it should ever be in the best interests of a claimant to bargain away his rights to future medical treatment for a lump sum. After all, how can unknown future medical costs be subjected to commutation on an actuarial basis? It is significant that the Council of State Government's draft compensation law does not permit even its strictly controlled application of lump-summing to be applied to medical benefits.

The Board encouraged Lindekugel to pursue a claim against Fluor for medical expenses:

[W]e would hope he would pursue claims for work-related medical costs against either Fluor (the first employer) or [Easley]. Even his attorney believes [Lindekugel] has a right of review against Fluor, but no claim has been filed against Fluor since the so-called settlement hearing in 1983. We do not understand why this has not occurred when the attorney asserts [Lindekugel] may have a right....

In addition, assuming [Lindekugel] has a right of review against Fluor for medical treatment, we question why Fluor was not brought into the present action since one issue settled in the C & R was medical treatment. Of course, the effect of the continuance hearing in 1983 has never been resolved.

Eventually Lindekugel hired a new attorney who on September 30, 1993, filed a claim against Fluor for medical expenses. Fluor answered, denying liability based on the oral dismissal with prejudice of May 12, 1983. The Board held that the oral order was valid. Lindekugel appealed to the superior court, which affirmed the Board. Lindekugel now appeals to this court.

Lindekugel makes two arguments. First, he contends that the stipulation to dismiss Fluor with prejudice was "an agreement in regard to a claim" within the meaning of former subsection .210(b) of AS 23.30. Because the agreement was not set forth on a form prescribed by the Board and because the Board did not find it to be in the best interest of Lindekugel, he contends that it was, to use the language of subsection .210(b), "void for any purpose."

Second, and alternatively, Lindekugel argues that the Board abused its discretion in not setting aside the stipulation for good cause shown.

In response, Fluor argues first that assuming that the stipulation was invalid under subsection .210(b), it was merely voidable rather than void ab initio. As a voidable decision it is now enforceable since it was not corrected through a timely appeal or motion for reconsideration. Second, Fluor contends that the stipulation to dismiss the claim with prejudice was not "an agreement in regard to a claim" within the meaning of subsection .210(b). Third, Fluor contends that the stipulation for dismissal with prejudice was governed by the Board's regulation concerning stipulations, 8 AAC 45.050(c)(10). Fourth, Fluor argues that Lindekugel has waived any right he might have had to reassert claims against Fluor because (1) his counsel agreed to dismiss them with prejudice, (2) Lindekugel delayed objecting to the effect of the stipulation for more than ten years, and (3) Lindekugel failed to bring the case to hearing within two years as required by AS 23.30.110(c). Fifth, Fluor argues that the Board did not abuse its discretion in failing to set aside the stipulation for dismissal with

prejudice because (1) the Board lacked such discretion as the stipulation was encompassed in an order of the Board and (2) Lindekugel's delay in requesting relief—and the prejudice to Fluor associated with that delay—justified the Board in not reopening the claim.

The statute which is central to the disposition of this claim is AS 23.30.210(b). In 1983 it read as follows:

> At any time after death, or after 30 days subsequent to the date of the injury, the employer and the employee or the beneficiary or beneficiaries, as the case may be, have the right to reach an agreement in regard to a claim for injury or death hereunder in accordance with the applicable schedule hereof, but a memorandum of the agreement in a form prescribed by the board shall be filed with the board. Otherwise, the agreement is void for any purpose. If approved by the board, the agreement is enforceable the same as an order or award of the board and discharges the liability of the employer for the compensation notwithstanding the provisions of §§ 130, 160, and 245 of this chapter. The agreement shall be approved by the board only when the terms conform to the provisions of this chapter and, if it involves or is likely to involve permanent disability, the board may require an impartial medical examination and a hearing in order to determine whether or not to approve the agreement. The board may approve lump-sum settlements when it appears to be to the best interest of the employee or beneficiary or beneficiaries.[2]

The regulation governing stipulations in existence as of the 1983 hearing was 8 AAC 45.050(c)(10). It provided:

> Stipulations between the parties may be made at any time in writing prior to the submission of the proceeding or may be made orally or in the course of any hearing.

> (A) Such stipulation shall be binding upon the parties thereof unless permission be given for good cause to withdraw therefrom.

> (B) The Board may base its findings upon the facts as they appear from the evidence, or may cause further testimony to be taken or investigation made in the manner prescribed by the Act, any stipulation to the contrary notwithstanding.

The regulation governing settlements in existence as of the 1983 hearing was 8 AAC 45.160. It provided in relevant part:

> Agreed Settlements. (a) Agreements which provide for the payment of less than the full amount of compensation due or to become due, and which undertake to release the employer from all future liability, will be approved only where it appears that a reasonable doubt exists as to the rights of the parties or that the approval would be for the best interest of the parties.

> (b) All agreed settlements must conform strictly to the requirements of AS 23.30.210.

> . . . .

> (d) The board will inquire into the adequacy of all compromises, and may, in its discretion, set the matter for hearing to take evidence when necessary to determine whether such agreement shall be approved or disapproved.

Currently, the Board has in effect regulations requiring stipulations waiving an employee's right to benefits to comply with current AS 23.30.012 (former subsection .210(b)) and providing that settlements waiving medical benefits are presumptively unreasonable.[3]

---

2. The statute has now been renumbered; it currently appears, confusingly, as section .012 rather than subsection .210(b).

3. 8 AAC 45.050(f)(3) (1996) provides:
   Stipulations of fact or to procedures are binding upon the parties to the stipulation and have the effect of an order unless the board, for good cause, relieves a party from the terms of the stipulation. A stipulation waiving an employee's right to benefits under the Act is not binding unless the stipulation is submitted in the form of an agreed settlement, conforms to A.S. 23.30.012 and 8 AAC 45.160, and is approved by the board.
   8 AAC 45.160(c)(1996) provides in relevant part:
   Every agreed settlement must conform strictly to the requirements of AS 23.30.012. . . .
   8 AAC 45.160(e) (1996) provides in relevant part:
   Agreed settlements in which the employee waives medical benefits or benefits during rehabilitation training are presumed unreason-

1. *Was the Oral Stipulation for Dismissal with Prejudice an Agreement Regarding a Claim within the Meaning of Subsection .210(b)?*

We answer this question in the affirmative.

■ The stipulation is "an agreement in regard to a claim" as we interpret that term. The meaning of the statutory term "agreement in regard to a claim" is clarified by the third sentence of subsection .210(b), which explains that the agreement, "[i]f approved by the board ... *discharges the liability of the employer.* ..." The emphasized language thus indicates that it is not every "agreement in regard to a claim" that is covered by subsection .210(b)—for stipulations as to procedural matters and as to facts would come within a broad construction of that term—but only those agreements which have the effect of discharging the liability of the employer.

This interpretation is consistent with the Board's interpretation of the statute as reflected in regulations in effect at the time of the 1983 hearing, 8 AAC 45.050(c)(10) and 8 AAC 45.160, and in current regulations, 8 AAC 45.050(f)(3) and 8 AAC 54.160(c) (*see supra* n. 3 and preceding text) (all cited regulations provide that stipulation waiving employee's rights to benefits must conform with the section currently numbered .012).

Because the oral stipulation for dismissal with prejudice discharged the liability of an employer, we conclude that the oral stipulation was an "agreement regarding a claim" within the meaning of subsection .210(b).[4]

2. *What Is the Effect of Noncompliance with Subsection .210(b)?*

■ Subsection .210(b) expressly provides that where its terms are not complied with, "the agreement is void for any purpose." Lindekugel argues that the oral order of dismissal is also void since its only basis was the void stipulation. Fluor argues that the oral order was merely voidable and became enforceable after the time for appealing or

seeking reconsideration passed. In our view Lindekugel has the better of this argument for three reasons.

The first and most important is the legislative language. The phrase "void for any purpose" is a clear indication that the legislature intended that no legal consequences should flow from an agreement covered by subsection .210(b) which does not meet its requirements.

Second, the purpose of the "void for any purpose" language in subsection .210(b) is to prevent poorly conceived agreements from discharging an employer's liability. Underlying this purpose are reasons which are both personal to the injured worker and social in character. The personal reasons are premised on the thought that the injured worker should not give up his or her rights except with knowledge and deliberation concerning the consequences. Included in the social reasons is the thought that if the injured worker improvidently surrenders his or her rights society may ultimately bear the burden of the worker's decision through public welfare or private charity. To allow a noncomplying settlement agreement to be validated by an order subverts these purposes.

The social reasons have special force when considering whether the oral order based on the stipulation should be regarded as void or merely voidable. In *Perry v. Newkirk,* 871 P.2d 1150, 1154–55 (Alaska 1994), we held that a superior court judgment approving a stipulation in a divorce case terminating the father's parental rights was void rather than merely voidable because of the public interest in the subject matter. The public interest in the subject matter of this case is also strong, as the Board concluded in denying approval of the 1990 compromise with Easley which would have waived medical benefits. *See supra* pp. 1308–09.

Third, Fluor's argument is based on the assumption that the oral order of the hearing

---

able and will not be approved absent a showing that the waiver is in the employee's best interests.

**4.** In accordance with this interpretation, we note that stipulations governed by 8 AAC 45.050(c)(10) which have the effect of discharging an employer's liability must also satisfy the statutory requirements of subsection .210(b).

officer was a final and appealable order. Fluor states:

> An appeal of a decision of an administrative agency must be brought within 30 days of the filing of a final order. Appellate Rule 602(a)(2); *Diedrich v. City of Ketchikan*, 805 P.2d 362, 365 (Alaska 1991).

Appellate Rule 602(a)(2) as it existed in 1983 read as follows:

> The time within which an appeal may be taken to the superior court from an administrative agency shall be 30 days from the date that the order appealed from is mailed or delivered to the appellant. If a request for agency reconsideration is timely filed before the agency, the notice of appeal must be filed within 30 days after the agency's reconsideration decision.[5]

The language of Appellate Rule 602(a)(2) requiring mailing or delivery of the order in question implies that a written order is necessary in order to trigger the thirty-day period. *Diedrich*, cited by Fluor, is not to the contrary for there was a written order in that case. 805 P.2d at 364 n. 1. A review of our case law has not revealed any case in which we have held that an oral administrative order was a final order for the purposes of triggering the thirty-day appeal period expressed in Appellate Rule 602(a) or its predecessor, Appellate Rule 45. Similarly, AS 23.30.125(a) requires that a final order be written, since oral orders cannot be filed:

> A compensation order becomes effective when filed in the office of the board as provided in AS 23.30.110 and, unless proceedings to suspend it or set it aside are instituted as provided in (c) of this section, it becomes final on the 31st day after it is filed.

### 3. Remaining Issues

The above discussion effectively disposes of this case. The oral order dismissing Fluor was void. Lindekugel's claim for medical expenses against Fluor thus remains to be decided. Fluor's claim of waiver fails for the same reasons that the stipulation cannot be enforced. Johnson's agreement to the stipulation is the predicate for the waiver argument, and the agreement is void. The two-year period of AS 23.30.110(c) [6] is not a bar, for Lindekugel requested a hearing within two years of Fluor's controversion. *See Huston v. Coho Electric*, 923 P.2d 818 (Alaska 1996); *Tipton v. ARCO Alaska*, 922 P.2d 910 (Alaska 1996). We need not decide whether the Board abused its discretion in failing to set aside the stipulation, for it was void.[7]

The decision of the superior court affirming the decision of the Board is REVERSED, and this case is REMANDED to the superior court with instructions to reverse the Board's decision and remand the case to the Board for further proceedings.

FABE, J., not participating.

---

5. In its current form, Appellate Rule 602(a)(2) has the following additional language which was not present in 1983:

> The 30-day period for taking an appeal does not begin to run until the agency has issued a decision that clearly states that it is a final decision and that the claimant has thirty days to appeal. An appeal that is taken from a final decision that does not include such a statement is not a premature appeal.

6. The last sentence of AS 23.30.110(c) provides: "If the employer controverts a claim on a board-prescribed controversion notice and the employee does not request a hearing within two years following the filing of the controversion notice, the claim is denied."

7. Fluor argues that if Johnson had not agreed to the stipulation it would have presented its medical witness who would have testified that the medical expenses incurred by Lindekugel between the second accident on October 8, 1981, and the hearing, May 12, 1983, were caused by the second accident. Fluor does not argue that the witness is now unavailable or that the same testimony cannot be obtained from another witness. But there will be a duplication of expenses which must be borne by Fluor. We note that if Fluor's witness had testified and persuaded the Board, the Board's decision on the merits would not have discharged Fluor as to future medical expenses—those incurred after the hearing. Lindekugel, and Easley, would always be free to contend that the second accident had consequences which were limited in character and that medical expense claims presented at future hearings remained Fluor's responsibility. Thus Fluor's claim that it was prejudiced by not going forward at the 1983 hearing is plausible, but the prejudice it may have suffered is not as significant as Fluor implies.